**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KEELEY HAMILTON,

            *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant.*

_____/

CASE NO. 20-cv-11033

DISTRICT JUDGE MARK A. GOLDSMITH

MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 13, 16)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the ALJ's decision. Consequently, I recommend **GRANTING** Plaintiff's Motion, (ECF No. 13), **DENYING** the Commissioner's Motion. (ECF No. 16), and **REMANDING** the case to the Commissioner under Sentence Four of 405(g) to elucidate further testimony from the VE regarding any conflicts between his or her testimony and the DOT.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, the present case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Title II Disability Insurance Benefits (DIB) and claim for Title XVI Supplemental Income Security Benefits

(SSI). (ECF No. 3.) This case is before the Court upon the parties' cross-motions for summary judgment. (ECF No. 13, 16.)

Plaintiff filed applications for DIB and SSI benefits on March 7 and March 20, 2017, alleging that she became disabled on December 18, 2015. (ECF No. 9, PageID.65.)[1] The Commissioner denied the claims. (ECF No. 9, PageID.136, 137.) Plaintiff requested a hearing before an ALJ and a hearing was held on October 16, 2018. (ECF No. 9, PageID.79-114.) The ALJ issued a decision on February 1, 2019, finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (ECF No. 9, PageID.65-73.) The Appeals Council denied review of the ALJ's decision (ECF No. 9, PageID.47-49.) Plaintiff subsequently filed a complaint seeking judicial review of the ALJ's final decision on April 27, 2020. (ECF No. 1.) Plaintiff filed her Motion for Summary Judgment on November 12, 2020 (ECF No. 13), the Commissioner countered with its own Motion on January 7, 2020 (ECF No. 16), and Plaintiff replied on January 25, 2020. (ECF No. 17.)

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks

---

[1] Neither party notes the contradiction in the record wherein it appears that Plaintiff's SSI application was dated April 7, 2017, rather than March 20, 2017. (ECF No. 9, PageID.246.) Since the parties do not raise any issue with the ALJ's stated dates used, the court assumes the dates in the opinion are correct or that any error was harmless.

omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

## C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step

without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d

640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other

jobs in significant numbers exist in the national economy that [the claimant] could perform

given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was

not disabled. (ECF No. 9, PageID.73.) At step one, the ALJ found that Plaintiff met the

insured status requirements through December 31, 2020, and that he had not engaged in

substantial gainful activity since his alleged onset date of December 28, 2015. (*Id.* at

PageID.67-68.) At step two, the ALJ concluded that Plaintiff had the following severe

impairments: degenerative disc disease of the spine; left cubital tunnel syndrome; and

obesity. (*Id.* at PageID.68.) The ALJ also decided, however, that these impairments did not

meet or medically equal a listed impairment at step three. (*Id.*) Next, the ALJ found that

Plaintiff had the residual functional capacity (RFC) to perform

> light work…except no hazards, including work at unprotected heights or
> around dangerous moving machinery. No climbing of any ladders, ropes, or
> scaffolds. No more than occasional climbing of ramps or stairs. No more than
> occasional balancing, stooping, kneeling, crouching. No crawling. No driving
> in the course of employment. No constant handling or fingering in the left
> non-dominant upper extremity, but the ability for frequent handling and/or
> fingering in that extremity.

(*Id.* at PageID.68.) At step four, the ALJ found that Plaintiff could not perform any past

relevant work. (*Id.* at PageID.71) At step five, the ALJ found that Plaintiff could perform

a limited range of light work based on transferrable work skills she acquired from prior

occupations and that appropriate jobs existed in significant numbers in the national economy. (*Id.* at PageID.71-72.) This finding relied on the testimony of the Vocational Expert (VE). (*Id.* at PageID.72.)

### E. Administrative Hearing

#### 1. Plaintiff's Testimony

At the hearing held on October 18, 2018, Plaintiff testified that she was born on November 3, 1959, obtained an Associate's Degree, and last worked full-time in 2004 with Garden City Schools where she ran the latch key program. (ECF No. 9, PageID.82-83.) Plaintiff also worked part-time as a cashier at the School Craft College bookstore where she bagged items and stocked the shelves, which required carrying boxes weighing around 40 pounds. (ECF No. 9, PageID.83-84.) Plaintiff also worked part-time at Kohl's and when she worked there, she first worked on the floor but would a "couple of different times" per shift "go over [to work a cash register] five, 10 minutes [to] help get down the line, and then go back to the floor." (ECF No. 9, PageID.86-87.) Plaintiff indicated she stopped working because she was taken off her duties on the floor and placed into a role only as a cashier because she "was having trouble bending over to stock shelves." (ECF No. 9, PageID.92.) Although Plaintiff thought that after being taken off the floor she would not have to exert herself as much but "because you - - all of our bags were on shelves, so you had to bend over to get the bags" so the job still took a toll on her. (ECF No. 9, PageID.92.) Plaintiff stated that she did not think she could work because "if it's like repetitious so it's a lot of bending, picking up, that  - -  I could only do it for a few minutes and then I would start to get, you know, the back pain." (ECF No. 9, PageID.94.)

Plaintiff testified that she can sit for "a half hour before I have to stand" and even though she has "always had a job that I pretty much stood at, [] I can actually only stand a few minutes before I have to like lean on something." (ECF No. 9, PageID.97.) Plaintiff stated that she can walk from the parking lot to the grocery store but that she "always ha[s] to have something to lean on…it's like I either have to stop moving or to sit down – when I walk. When it starts to hurt, I either have to stop walking, or I have to sit." (ECF No. 9, PageID.98.) Plaintiff explained that her back pain is in one spot but "it's constant." (ECF No. 9, PageID.98.) She is able to get things done but "getting stuff done takes for - - a really long time…because I keep stopping, taking breaks, or I do things a lot different than I used to" for example, although she used to "just stand there and do" dishes, now she has to "lean on the counter to do dishes[.]" (ECF No. 9, PageID.98.) Plaintiff testified that "[o]utside is my passion and I can't really do anything in the yard except for trying to just keep it maintained." (ECF No. 9, PageID.99.) Plaintiff is able to care for her own grooming needs, including getting dressed herself, and watching television for an hour at a time. (ECF No. 9, PageID.100-101.) Plaintiff does not sleep well and takes naps but she does not have any side effects from the Naproxen that she takes. (ECF No. 9, PageID.101.) Since Plaintiff lives alone, she is able to carry grocery sacks in, and bring packages in, even if she has to push the boxes sometimes. (ECF No. 9, PageID.101.) Plaintiff does not have any symptoms from depression or anxiety but she has "a recall issue" that has "gotten a little worse because of my age, but I've always been that way." (ECF No. 9, PageID.102.) Plaintiff can use stairs as long as she can "use a hand rail" and she can drive for short distances. (ECF No. 9, PageID.102.) Plaintiff was set to begin physical therapy to "get a

little bit of the strength back…maybe work out some of the pain." (ECF No. 9, PageID.103.) Plaintiff stated that she experiences numbness in her left hand "all the time" but that she can still manage buttons, zippers and the like. (ECF No. 9, PageID.103.) Plaintiff also experiences cramping in her left hand and the middle finger on the left hand. (ECF No. 9, PageID.102-103.) Plaintiff's dominant hand is her right hand. (ECF No. 9, PageID.103.) Plaintiff watches her grandchild full-time and is able to watch the baby, change the baby's diapers and lift 50 pounds but "can't go anywhere with it" and that when she filled out her questionnaire, she thought the dog food bag that she uses was a 50 pound bag but learned that it is only 40 pounds. (ECF No. 9, PageID.107-108.) She is able to pick the 40 pound bag of dog food out of the shopping cart and lift it into her car. (ECF No. 9, PageID.108.) Plaintiff testified that she can comfortably lift and carry "maybe like 20 pounds." (ECF No. 9, PageID.108.)

## 2.  The VE's Testimony

The VE testified that he had a change to his work summary based on testimony at the hearing and that he would consider the "retail cashier position is semi-skilled, SVP of 3, not 5 as I had indicated on the summary form, light physical exertional level per the DOT, medium as performed according to testimony." (ECF No. 9, PageID.95.) The VE further found that Plaintiff had transferable skills: "Cashiering, processing, payment for business services via check, money order, cash, credit card." (ECF No. 9, PageID.95.) When asked, the VE indicated that there would be sedentary cashier jobs available in the national economy for cashiers, food checker, Dictionary of Occupational Title (DOT) 211.482-014, in the 58,000 range nationally and around 2,000 in Michigan. (ECF No. 9,

PageID.95-96.) There would also be, in the same classification, 6,000 auction clerk jobs

available nationally (DOT 294.567-010). (ECF No. 9, PageID.96.)

> The ALJ then asked the VE to consider a hypothetical individual who is able to
>
> Under the limitation of light work; no exposure to hazards and that includes working in unprotected heights or on dangerous, moving machinery; no climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs; no more than occasional balancing, stooping, kneeling, crouching; no crawling; no driving in the course of employment; no constant handling or fingering in the left non-dominant upper extremity, but with the ability for frequent handling and/or fingering in that extremity.

(ECF No. 9, PageID.100-111.) The ALJ asked whether such an individual could perform

the cashiering jobs of food checker and auction clerk and the VE indicated that such a

person could perform those jobs but that the retail cashier jobs would be precluded because

they require constant fingering. (ECF No. 9, PageID.111.) The hypothetical person could

also perform the housekeeping cleaner job (DOT 323.687-014)(229,000 jobs nationally),

receptionist and information clerk jobs (DOT 237.367-018)(87,000 jobs nationally), and

storage facility rental clerk (DOT 295.367-026)(100,000 jobs nationally). If a sit/stand

option was added, the only job that would be eliminated was the housekeeping cleaner

position. (ECF No. 9, PageID.112.) None of the jobs listed require a fast production pace.

(ECF No. 9, PageID.112.) If the person needed to use a cane, the housekeeping cleaner job

would be eliminated but the other two jobs at the light level and all sedentary jobs could

still be performed. (ECF No. 9, PageID.113.) The VE noted that the sit/stand option is not

listed in the Dictionary of Occupational Titles (DOT) so the VE's response was "based on

either my observation of these jobs or on-site job analysis within Michigan businesses."

(ECF No. 9, PageID.113.) Finally, the VE noted that a person could only be off-task for

10% of the day, other than regularly scheduled breaks, to remain employed. (ECF No. 9, PageID.113-114.)

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[2] carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. 20 C.F.R. § 404.1513(d) (2016). Only "acceptable medical sources" can establish

---

[2] Various amendments have been made to the regulations since Plaintiff filed his claim. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir. 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same)); *Miller v. Comm'r of Soc. Sec.*, No. 1:17-cv-0718, 2018 WL 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. 20 C.F.R. § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical

and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence

in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of*

---

[3] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

*Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)   [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)   Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R.§ 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

## G.   Arguments and Analysis

Plaintiff argues, in her corrected motion for summary judgment (corrected as to citation format only), that the ALJ: (1) improperly categorized Plaintiff's past relevant work as a cashier-checker (DOT 211.462-014) rather than a stock clerk or composite job of cashier and stock clerk and even if the position was properly categorized as a cashier-checker, the ALJ erred in finding that past relevant work was semi-skilled; (2) even if

Plaintiff had cashier skills to transfer, the ALJ erred in finding the skills were transferrable to a significant range of other skilled or semi-skilled occupations nationally; and (3) the ALJ erred in failing to ask the Vocational Expert (VE) if his testimony conflicted with the Dictionary of Occupational Titles (DOT). (ECF No. 13.)

Defendant counters: (1) that Plaintiff waived any objection to the VE's testimony regarding prior relevant work or transferable skills because she did not raise any objections prior to the ALJ's decision; (2) Plaintiff's objections also fail on the merits because the ALJ's findings were supported by the uncontroverted testimony of the VE; (3) The ALJ properly relied on the VE's testimony that Plaintiff's skills were transferable to jobs existing in significant numbers in the national economy; and (4) there is no apparent unaddressed conflict between the VE's testimony and the DOT, therefore, the ALJ had no duty to question the VE about any possible conflicts. (ECF No. 16.)

Plaintiff replies that the ALJ has a duty to inquire whether the VE's testimony conflicts with the DOT whether there is an "apparent conflict" or not and that Plaintiff did not waive any issues since the court must always determine whether substantial evidence supports the ALJ's decision. (ECF No. 17.)

### 1.  Conflict Between the VE Testimony and the DOT

Plaintiff argues that the ALJ erred in failing to ask the Vocational Expert (VE) if his testimony conflicted with the Dictionary of Occupational Titles (DOT). (ECF No. 13.) Specifically, Plaintiff contends that the VE erroneously "testified that the Plaintiff had transferrable skills as a cashier and processing payments" even though Plaintiff's descriptions of the jobs showed she was more of a stock clerk than a cashier since the stock

clerks mostly tend to the floor but would also occasionally fill in and tend the cash register. (ECF No. 13, PageID.480-481.) In addition, Plaintiff contends that "the VE's testimony that the Plaintiff has cashier skills transferable to auction clerk apparently conflicts with the DOT description of auction clerk and the tools they use." (ECF No. 13, PageID.491.) Finally, Plaintiff argues that "the VE's testimony that the Plaintiff's Kohl's job was cashier-checker apparently conflicts with the DOT description of that job which suggests that stocking and shelving is no more [than] an incidental part of a cashier job." (ECF No. 13, PageID.491.)

Defendant counters that there is no apparent unaddressed conflict between the VE's testimony and the DOT, therefore, the ALJ had no duty to question the VE about any possible conflicts. (ECF No. 16.) Defendant specifically asserts that the "VE's testimony regarding Plaintiff's PRW (prior relevant work) included the proper exertional and skill levels" and that the "VE identified that Plaintiff actually performed her PRW as a retail cashier and as a book salesperson at different exertional levels than the positions are generally performed per the DOT." (ECF No. 16, PageID.525.) Defendant also notes that the "VE proactively informed the ALJ when he was answering based upon his 'experience in business and industry' or 'observations of these jobs or on-site job analysis within Michigan businesses' regarding vocational factors 'not address[ed] by the DOT or its companion publications.'" (ECF No. 16, PageID.525, quoting ECF No. 9, PageID.113.)

I first note that the VE's "proactive" information was not as broad as Defendant implies; the VE noted that the sit/stand option is not listed in the Dictionary of Occupational Titles (DOT) so the VE's response was "based on either my observation of these jobs or

on-site job analysis within Michigan businesses." (ECF No. 9, PageID.113.) The VE did not volunteer any broad-sweeping statement that his testimony did not conflict with the DOT in any respect.

Social Security Ruling (SSR) 00-4p explains that, in making disability determinations, the agency relies "primar[ily] on the DOT…for information about the requirements of work in the national economy." 2000 WL 1898704, at *2 (Dec. 4, 2000).[4] Since the "DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," the VE's testimony is used "to provide more specific information about jobs or occupations than the DOT." *Id.* at *2-3.)  The ALJ has an affirmative duty, under SSR 00-4p, to ask the VE about any possible conflicts between the VE's testimony and the information as stated in the DOT. *Lindsley v. Comm'r of Soc Sec.*, 560 F.3d 601, 603 (6th Cir. 2009). If the VE identifies a conflict, or if one is apparent during the hearing, the ALJ must also seek a reasonable explanation for any "apparent unresolved" conflict from the VE. *Id.*; SSR 00-4p. Neither the DOT nor the VE evidence "automatically 'trumps' when there is a conflict [thus,] the adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than the DOT information." SSR 004-9p.  Once the ALJ obtains a reasonable explanation from the VE, the ALJ is not required to further "conduct an independent investigation" to determine if the VE or other witness is correct. *Id.* at 606.

---

[4] The DOT has been criticized as being out-of-date; however, most courts have concluded the DOT is still relevant as it is the only source mentioned in SSR 00-4p. See, *Roberts v. Comm'r of Soc Sec.*, 2019 WL 40023549, at *9 (S.D. Ohio Aug. 26, 2019).

SSR 82-14, 1982 WL 31389, at *5 (Jan. 1, 1982), under the heading "How transferability is determined in general," provides factors that determine transferability, including

> (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job); (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved.

*Id*.

In the instant case, the ALJ failed to ask the VE whether his or her testimony conflicted with the DOT. In addressing scenarios where the ALJ failed to ask the VE about conflicts between his or her testimony and the DOT, several clear rules have emerged from the case law. If the VE volunteers a statement that his or her testimony is consistent with the DOT, then there is no need for the ALJ to ask the question the VE has already answered. See, e.g., *Wilson v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014); *Rapp v. Comm'r of Soc. Sec.*, 2020 WL 4581498, at *7 (N.D. Ohio July 28, 2020). In addition, when the ALJ questions the VE is of no consequence, i.e., the ALJ may inquire whether the VE testimony conflicts with the DOT anytime during the VE's testimony, even at the beginning. See, e.g., *Mitchell v. Comm'r of Soc. Sec.*, 2019 WL 1521996, at *3 (E.D. Mich. Mar. 7, 2019)(collecting cases). Finally, if no alleged, potential or actual conflict exists, "an ALJ's failure to inquire about a nonexistent conflict is necessarily harmless." *Joyce v. Comm'r of Soc Sec.*, 662 F. App'x 430, 436 (6th Cir. 2016). On the other hand, where an "inconsistency with the DOT clearly exists" a remand is necessary. *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 575 (6th Cir. 2007).

A more nuanced question arises where the ALJ failed to question the VE at any time as to whether any of the VE's testimony conflicted with the DOT, the VE did not volunteer any information regarding potential conflicts, and Plaintiff points to at least one potential conflict between the VE's testimony and the DOT that is not necessarily clear. SSR 00-4p requires the ALJ to address any "apparent" conflicts. Even if an apparent conflict existed that the ALJ did not resolve, some courts analyze the situation themselves and if the court determines no conflict actually exists, the court further finds that any error on the part of the ALJ was harmless. See., e.g., *Goulette v. Comm'r of Soc. Sec.*, 2013 WL 2371695, at *11 (E.D. Mich. May 30, 2013); *Reese v. Saul*, 2020 WL 13122703, at *14-15 (E.D. Tenn., Mar. 19, 2020). This approach is appropriate where resolution of the issue is straightforward, i.e., it is clear that no conflict exists.

However, if it is unclear whether the VE testimony and DOT actually conflict, but there is sufficient argument that a potential or apparent conflict may exist, remand for the ALJ to explore and resolve the potential or apparent conflict is needed. *Simpson v. Comm'r of Soc. Sec.*, 2019 WL 1255427, at *8 (E.D. Mich. Mar. 19, 2019)(where the ALJ failed to inquire of the VE as to a "potential, if not apparent, conflict" between the VE's testimony and the DOT's description, the case should be remanded for the ALJ to make the appropriate inquiry); *Pauquette v. Saul*, 2019 WL 5872486, at *7 (M.D. Tenn. Aug. 15, 2019)("Because [plaintiff] is entitled to a reasonable explanation regarding the apparent conflicts between the DOT and the VE's testimony…the ALJ's conclusions based on the VE's testimony are not supported by substantial evidence [so] reversal and remand are appropriate."); *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006)("It is not clear to

us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help. We cannot determine, based on the record, whether the expert's testimony regarding stooping or reaching was actually inconsistent with the DOT" thus, the case was remanded); *Williams v. Astrue*, 2011 WL 977507, at *3 (C.D. Cal. Mar. 17, 2011)(remanding for further administrative proceedings to resolve a potential conflict even though "[i]t may be that the apparent conflict between the DOT and the VE's testimony are not actual conflicts, or that any conflict may be satisfactorily resolved").

Here, I suggest that the potential conflict between the DOT descriptions and the VE's testimony is not one that can be so clearly resolved without a remand. Stated differently, the VE's conclusion that Plaintiff possessed transferable skills from having been a cashier-checker is not so sound that any failure on the part of the ALJ to inquire about conflicts could be considered harmless. The DOT description of cashier-checker (DOT 211.464-014) defines the job as: "Operates cash register to itemize and total customer's purchases in grocery, department, or other retail store. Reviews price sheets to note price changes and sale items. Records prices and departments, subtotals taxable items, and totals purchase on cash register. Collects cash, check, or charge payment from customer and makes change for cash transactions. Stocks shelves and marks prices on items. Counts money in cash drawer at beginning and end of work shift. May record daily transaction amounts from cash register to balance cash drawer. May weigh items, bag merchandise, issue trading stamps, and redeem food stamps and promotional coupons. May cash checks. May use electronic scanner to record price. May be designated according to

items checked as Grocery Checker (retail trade)." 1991 WL 671841.

Plaintiff indicated that she was a part-time cashier at the college bookstore but then described her job duties as bagging items and stocking the shelves, which required carrying boxes weighing around 40 pounds. (ECF No. 9, PageID.83-84.) Plaintiff's later work at Kohl's was primarily work on the floor with the additional task of a "couple of different times" per shift she would "go over [to work a cash register] five, 10 minutes [to] help get down the line, and then go back to the floor." (ECF No. 9, PageID.86-87.) Plaintiff indicated she stopped working because after she was taken off her duties on the floor and placed into a cashier position, she "was having trouble bending over to stock shelves." (ECF No. 9, PageID.92.) Therefore, she did not continue to work at Kohl's for long after having been taken off the floor.[5] It is not clear from the record whether Plaintiff acquired the requisite cashiering skills in her prior jobs. Plaintiff's description of her work duties casts doubts on any conclusion that she did acquire such skills. The jobs the VE proffered as available to a hypothetical person with Plaintiff's background were cashiering jobs (except for the housekeeper jobs which were eliminated if a need for a sit/stand option was added). The cashiering jobs were appropriate only if Plaintiff acquired transferrable cashiering skills learned from her PRW. (ECF No. 9, PageID.111-112.) Thus, the question whether the VE's testimony conflicted with the DOT regarding transferrable skills was

---

[5] Under the other substantive arguments in the briefs, Defendant argues that if another position, such as stock clerk as argued by Plaintiff (DOT 299.367-014) would more accurately circumscribe Plaintiff's PRW, the ALJ was free to rely on VE testimony even if multiple DOT code positions applied. (ECF No. 16, PageID.517.) However, this argument is not relevant to the question whether the ALJ failed in his duty to seek VE testimony regarding any conflict with the DOT as to PRW and transferable skills.

central to the Step Five analysis. I therefore suggest that the case be remanded to allow the ALJ to inquire and resolve the potential conflicts regarding transferable skills and the proper classification of Plaintiff's PRW. It may be that once these issues are addressed, the ALJ will properly find that no actual conflict exists but this court lacks sufficient information to decide this issue and therefore remand is necessary. *Simpson; Pauquette, Prochaska* and *Williams, supra.*

This result properly respects the deference afforded administrative agency decisions subject to judicial review. *American Lung Ass'n v. EPA*, 134 F.3d 388,392 (D.C. Cir. 1998)("With its delicate balance of thorough record scrutiny and deference to agency expertise, judicial review can occur only when agencies explain their decisions with precision…")

Finally, this result is not undermined by Defendant's contention that the VE's testimony was "uncontradicted." (ECF No. 16, PageID.512, 514.) *Fackler v. Berryhill*, 2017 WL 8536027, at *9 (N.D. Ohio, Nov. 20, 2017)("Had the ALJ inquired of the VE whether a conflict exists, he may have been alerted to an actual conflict. Instead, the ALJ concluded without any foundation that the VE's testimony was 'uncontroverted,' which is the inevitable result where no inquiry concerning a conflict is made.")

### 2.  Other arguments

Since I recommend remand based on the above issue, I need not consider the other arguments raised.

### H.   Conclusion

For these reasons, I conclude that substantial evidence does not support the ALJ's

decision. Consequently, I recommend **GRANTING** Plaintiff's Motion, (ECF No. 13), **DENYING** the Commissioner's Motion. (ECF No. 16), and **REMANDING** the case to the Commissioner under Sentence Four of 405(g) to elucidate further testimony from the VE regarding any conflicts between his or her testimony and the DOT.

## III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ.

P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 31, 2021                                    S/ PATRICIA T. MORRIS
                                                         Patricia T. Morris
                                                         United States Magistrate Judge